3-16-0-4-7-5 Wells Fargo vs. Trustee for 1st Franklin Mortgage Loan Trust at All, Advocates by Mary Barber vs. Eric and Cynthia Laney, Families by Justin Abdulla Good morning and may it please the court. I am Justin Abdulla, counsel for the landings on this appeal. The issues presented for appeal in Wells Fargo v. Eric and Cynthia Laney are very narrow in scope and review and concern a question of procedure with regards to affidavits filed pursuant to 735 ILCS 5-6-0-4-7-5-6-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1-1- 1-1-1-1-1-1-1-1-1-1-1-1- Much of the ink of that proposed written discovery concerned any documents that could clarify the codes used in the payment history as quote, the payment history is necessary to be reviewed prior to any judgment in this case. And the defendant should clearly be able to read and understand the payment history. At the time the circuit court granted leaves to propound the proposed discovery. That discovery was propounded about two weeks later on July 13, 2015. The first letter pursuant to Rule 201-K was hand delivered in court on September 14, 2015. As stated in the record at page 600, the responses were then received on October 20, 2015. Soon thereafter, on December 9, 2015, the Landings Thru Counsel initiated a second attempt at a 201-K conference to request for the production of documents. Wells Fargo answered 41 with identical objections or references to the complaint or the exhibits that were the subject of these interrogatories and requests for production. Perhaps then the most crucial fact on this issue is that nothing changes between June 12, 2015 when the motion for summary judgment is filed and January 14, 2016 when it is heard. Defendants' appellants received no information regarding the payment history or any part of their affirmative defenses after six months of discovery proceedings. Landings plainly followed the admonishment from Harpway v. Korsen, which states, quote, where a party believes crucial evidence is necessary to oppose the motion and that evidence remains in the hands of the summary judgment movement who opposes the discovery request, the proper reason why states accurately what is our position on this issue, that homeowners tirelessly and diligently attempted to ascertain the facts contained in the affidavit of amounts due and owing, that the trust introduced with the purpose of being able to understand them sufficiently to either admit or contradict them. In following the procedure here, defendants' appellants committed themselves to having no other substantive response to the motion for summary judgment. The payment history codes, the information in the ledger in the record, and truly all of the nuance of reading a printout from the LSAMS software used in connection with the servicing of this loan were in Wells Fargo's sole possession. My argument today is simply if a homeowner properly uses the discovery process to ask for help in reading a document offered as evidence against him in a foreclosure proceeding, on balance of the equities, the trial court would err in denying that help to him. Wells Fargo says in its brief that the trial court correctly concluded no discovery was needed since Wells Fargo was in possession of a note endorsed in blank. Certainly this cannot be the standard in our state which has judicial foreclosure. While the landings may have ultimately lost on the issue of standing during the case, the breadth of the discovery propounded was calculated to lead to the discovery of relevant evidence regarding the payment history of this loan. When you had the summary judgment on the first issue, what do you think were the genuine issues of material fact that would have prevented summary judgment? Well, Justice, in this case, we don't have availability of a fact to our affirmative defenses. We try to take discovery to plead and prove an affirmative defense of standing on this case. And without the benefit of that discovery, I don't think I can stand before you today and speculate as to what the issue on liability would be. But certainly there are issues about damages. What did they say that, no, we actually made all our payments? Did my client say that? No, my client did not say that they had made all their payments. So when you got to, I guess what I'm saying is, succinctly, when you got to summary judgment, what genuine issue of material fact would have prevented the court from entering summary judgment? As we stated in the answer in affirmative defenses, there were some competing transfers, and we wanted to know whether the trustee factually ratified the transfer to have the date if we were going to prove our standing argument. So it was whether Wells Fargo had standing down there. That would have been our affirmative defense, yes. So it really isn't about the payment codes themselves, but you said that you didn't have the ability to read the payment history because you didn't have the codes. That really isn't one of the issues that you're really saying that standing is your issue of material fact. Yes, the payment codes go more to damages than to liability. And is there any dispute, I mean the allegation in the complaint for foreclosure says that after January 1, 2008 that no payments were made. Do your clients dispute that? From my recollection, my clients did not dispute that, frankly speaking. They never filed an affidavit to that effect. Lost my place momentarily. So to the issue regarding damages, inclusive of the issue whether the foreclosure plaintiff had proved the date of default of the loan for purposes of determining these damages. In the brief in support of the appeal, we make the statement that no evidence was proved to the exact month of the date of the default as the affiant never testified that the default occurred in a specific date. In paragraph three of the Wolford affidavit, present in the record on page 356, the affiant Wolford describes NationStar's servicing transfer and states that NationStar took over servicing of the loan from Bank of America on the 5th of December 2013. At the time of the transfer, the loan was $188,420.34. Wolford never claims the loan was in default for that amount and the trial court was offered no evidence in the affidavit as that amount does not appear again with any label indicating whether it may be a principal balance, interest total, or to any other sum. Compounding matters further, paragraph nine of the same affidavit states that the amount of default about one year later on December 19, 2014 is $363,741.71, very nearly a two-fold increase over the amount recited in connection with December 5, 2013. The interest total on this document reads $99,212.13 as well, accruing at $35.28 per diem. As we stated in our brief in support, there exists only 2,572 days between January 1, 2008, which is the date that plaintiff has stated was the date of default, and January 16, 2015, which is the date of hearing. 2,572 multiplied by $35.28 equals only $90,740.16. Subtracted from the interest total recited in the affidavit, there's a difference of about $8,471.97, or 240 days of the per diem in the judgment. That is simply unsubstantiated. At the hearing on the motion for summary judgment, the numbers for damages proposed by the affiant simply do not match any dates the affiant attempted to give. We're asking on appeal for the support to overturn the trial court's error here and remand the case for further proceedings because the damages sought are not correct. Yes, to the tune of about $78,000. But that was later. That's not at the summary judgment hearing we're talking about. Correct. It's about 5 months later in time at the confirmation sale. The final issue on this case concerns the attempt at loss mitigation through a loan modification. As 735 ILCS 5-15-1408D5 stated at the time, a sale may not be confirmed where the homeowner shows a material violation of the Home Affordable Modification Program. The material violation alleged was a failure of the servicer to voluntarily state the judicial sale for 30 days or until completing review of requested supplemental material. There was no non-approval notice ever sent. What was sent is enumerated in the record at 789-790 and includes a 4506D request for tax returns, bank statements, occupancy status of the house, the HAMP application, and a proof of rental receipts for a rental property in Arizona. This distinguishes this case from Bermuda's with citations in the record showing the exact documents that were provided. These documents were before the court, as is stated in the record, along with the maker of these documents. There was no contest in the record when the statement was made that the documents were previously made and put them as part of the record as soon as redacting them would have been practicable. I believe it was 24 hours even. As such, defendants appellants are rather firmly avoiding the evidentiary dangers that may have manifested in a case like Bermuda's. Defendants appellants show that they provided supplemental material upon request from Wells Fargo. They have made a verified pleading regarding the events that occurred with respect to the supplemental material provided and why they believed it was requested from them. This pleading contained a chronology of the dates of submission of the supplemental material that was requested by the foreclosure plaintiff. During oral arguments, the material violation was referenced with a citation to its location in HAMP regulations. In total, defendants appellants proved the sale was not stayed 30 days for review of these supplemental materials that they evidenced being requested and having been provided. This was the violation under D-5. The trial court erred when it did not sustain the objection to confirmation of sale on these grounds. Are there any questions for me at this time? I don't think so. All right. Thank you. Good morning, Your Honors. My name is Harry Arger. I'm here for the appellate, Wells Fargo. I won't regurgitate everything that we put in the brief, but they basically made three arguments. The first one I think is fairly easy. I'm not sure that they're really pursuing it too much anymore. It's the standing issue, had an endorsement in blank. I think the court is very familiar with the case law on that, and I don't think that's an issue. That doesn't preclude any type of reversal or remand of the trial court's judgments. The second issue is about whether there was a material issue of fact on summary judgment. We don't believe there was. We set forth in our brief the arguments about the history of how this thing came down. I think it's interesting that at no time did they file any counter affidavits. I know Justice Schmidt was kind of asking questions along that line. They never filed any counter affidavits to anything that was submitted. And with the submission, we think we made the prima facie case and established that there were no questions of fact. It was up to them to come forward with something. We put forth, the complaint has the date of the payments were stopped in January of 08. There was a letter sent to them that I think is on page 379 of the record. It was sent April 2nd, 2014. It says if you don't pay that X amount, which I don't think they're contesting, there's an acceleration. We went through a little bit about how this loan was, there was an addendum for interest only payments. So the principal didn't move at all because they were still in the interest only section when they defaulted. One thing that they talked about in their arguments today is they seem to be hanging their hat on this payment history and somehow the discovery. But I think Justice O'Brien was getting there too and said that really wasn't the issue. The issue of their discovery was more on that endorsement and the assignment issue. They're now back-ending it in this payment history. But I want to just make the Court aware of a couple of things. The payment history was attached. If we go to page 366 of the record, and then it's broken down starting at 368 about all the details of the payment history. That's all detailed. It was all submitted as part of the summary judgment record. And interestingly enough, on page if I can find it, 367, there's actually a breakdown of some codes and things like that. So I'm submitting that I think that whole payment history is a red herring because the payment history, and there's probably, I don't know, 50, 60 pages of payment history that were submitted as part of the summary judgment pleadings back then. The trial court judge, because the first time they raised it, they come in with this 191B affidavit, which is not signed by the party, which arguably it should have been. It's signed by what they ended up doing is they gave a lot of the same things that were attached to the summary judgment pleadings about the payment history and things like that. And then they had some objections on relevance. The relevance was what relevance is all this business about the assignment because we've got an endorsement blank. So that's really what happened. So then what happens, we go forward to the chronology is that's in June of 2015. He files his original 191 affidavit in June of 2015. June 29th, it's in re-notice in, what are we, November 9th of 2015. Five months later, we have to re-notice. They didn't file anything. They didn't file any motion to challenge our objections. They didn't file anything. Now again, they're responding to our pursuit for summary judgment. This is loan that hasn't been payments on for at this point almost seven years. And then at that point, after we filed the re-notice in November of 2015, a month later on December 23rd, they filed a second affidavit. Now it's a motion to overrule the objections only because we pushed the issue. And again, things up for hearing on January 14th of 2016. At no time, at no time did they submit anything from the actual borrowers themselves. Now it is true that apparently Mr. Landing was present with Mr. Abdilla at the January 14th, 2016 hearing. I'm sorry, I think he was actually at the one in July. I'm getting ahead of myself. But anyway, going to the January 14th, 2016 argument, which is when the judgment of foreclosure was entered. Again, they didn't file a substantive response. There's no counter affidavits. There's nothing challenging the veracity of what was submitted in the summary judgment. All they're saying is, we still need more discovery. At that point, the judge says, well, I don't think you need any more discovery. You had some six months ago. You never really challenged anything that was submitted to you. And on that, judgment was entered. It's then put up for sale. The sale is up on April 21st of 2016, three months later. There's never any of this business. If this happening was such a big deal to them, they never did any motion. I'll get to the section that he talked about, the material violation, in a minute. Because at no time was section 2.3.2 ever mentioned to the trial court. Now, he's saying that there was a narrative. He mentioned 2.2.3.2. If I said that right, and maybe that was the confusion, but we don't help. We can't cast a 250-page document with all kinds of rules and regulations in it. But the point of the matter is at no time prior to sale did they come in and say, hey, wait a minute, stop the sale. We're talking to you about HAMP. And the briefs are replete with all the back and forth. And I don't think there's any evidence in the record that they had submitted all the information that was required. Since the crash in 08, there's a lot of underwriting that has to be done on all these things. Not just the HAMP modifications, but any type of underwriting. And they have to verify income, and they have to make sure that the payments, even though they're reduced payments, are going to be able to be made. And it's a benefit to the borrowers. It's not a sword to be used like, wait a minute, you can't sell my property because I was talking to you about HAMP. There's procedures that need to be filed. No motions were filed. Even if it's now 2.3.2, which we argue isn't even proper because they never erased it in the trial court. They said 2.2.32, which we said in our briefs doesn't apply. Now I don't feel they say that, but even so, there was no motion to challenge, to delay or stop or in this 30-day business, nothing in there. And I keep going back to, they had all the information, never contested anything substantively. These are all procedural things that they're arguing. What happened then? The sale went through. There was a motion to approve the sale on March, I'm sorry, on May 13th. Again, this is now almost a month later after they claim you should have given us 30 days. Again, they never responded, never stopped the sale, never claimed any violation of HAMP, never claimed anything. They then do an objection again on June 22nd. This is now two months after the sale, more than 30 days after the sale. And they're saying, wait a minute, we think you need to stop this sale, judge. And the judge is like, well, where were you? What are you arguing with me now? Did you put any sworn copies, which is Bermuda's, say what you want about Bermuda's. One thing it does say is you need sworn copies, you need sworn documents. You can't just have people show up, oh, look who's here today, Mr. Landing. Oh, okay, we didn't know he was coming, there's no reference in the briefs that he's going to appear. Well, let's just on the fly talk about things like that. The judge correctly said, wait a minute, you never submitted any sworn copies of anything on HAMP. All you're doing as a counsel is making these arguments that they're conclusions. And the judge says, okay, fine, I'm overruling all those objections that you made. And I don't find that, number one, I'm not sure that there was. There's two problems to the HAMP issue. One is you have to show that you submitted an application. I don't think that was established on the record we have here. And secondly, it has to be a material violation of HAMP. There's no material violation of HAMP, clearly. And the judge said, and I'm sure your honors have read the record, he said, well, listen, I can't stop if the mortgage company came in here and said, don't give me anything else, you're going to be arguing that they violated something by saying, don't give me anything else. So what they said was, all right, you can submit it, but, you know, they didn't say take it back. They basically just said, well, you know, there's different documents that haven't been submitted. And again, I go back to the requirement, and that's what Bermuda says. Say what you want about it. It's almost on all fours to this case because there was a similar case in Bermuda's where they come after the fact, if you will, and come in and say, wait a minute, you should have stopped the sale. You violated HAMP. It's a material violation. The judge said, wait a minute. These are all conclusions and statements of counsel. There's no sworn testimony. There's no sworn documents on any of this stuff. And they said, well, wait a minute, give us more time to do more discovery. And the judge said, no. And the appellate court, it was the first district case, says that's completely proper. There was no abuse of discretion in denying that request. And that's what happened here. And, you know, we get back to, I kind of jumped a little bit into the third issue, but we get into HAMP. You know, we don't see that there's ever any evidence submitted that the application was submitted in complete form, which is what it's supposed to be, other than Mr. Abdullah saying it, and I guess having Mr. Landy stand next to him, but that isn't sufficient. And then number two, the bigger, I guess the argument that talked about in the brief is there's no material violation. And then I go back to this, the judge even asked him at the trial court, what's the material violation? And there was some hemming and hawing, and in the end he goes 2.2.3.2. This doesn't apply to this case because that's after there's a rejection, which there wasn't. There was never any formal rejection. It was more of a just, you know, you need to submit more documents kind of thing in this case. So that section doesn't apply. Now in appeal, I think they realize, well, wait a minute, you didn't cite to the right section in the trial court. It should have been 2.3.2. Well, again, there's not this confusion if things are reduced to writing. When you show up, and things that we're saying even today, you know, I mean, the briefs, there's a lot of time and effort put into those briefs, and the reason they're put in is so that the court is well informed and the lawyers know what the arguments are, and they can make their responses and rebuttals accordingly. When you just show up and you start spouting out, if you say it wrong, we don't know if you said it wrong. But anyway, the bottom line is that the two prongs of that section were not met. There's no material violation. The HAMP, again, we think is a red herring. This is an issue where summary judgment was properly granted, the sale was properly confirmed, and we ask that the trial court's decision be affirmed.  Thank you, Your Honor. Thank you very much, Mr. Arger. Thank you. Good morning again. May it please the Court. So to address with Mr. Arger's argument that defendants' appellants failed to file a counteraffidavit, our position has been very consistent all along that we lack the knowledge necessary to analyze this payment history to file a counteraffidavit based on what this defiant said. They alleged that there were no payments after January 2008. Right? They did. That's what the bank alleged. And your client would have the knowledge whether they did or did not make payments after January 2008, would they not? That is correct. And yet they never ever filed an affidavit that says no. We did make some payments after that. Surely, but there are other amounts inside of that affidavit that my client would have been liable for at the time. There are escrow amounts, there's interest calculations, other inspection amounts. There's an itemized list of hundreds of small-dollar amounts in that. Is your argument about whether they should have been foreclosed on or whether the damages amount was right? Well, they're identified as two separate issues presented for review. So to that extent, I think your Honor is right on getting to the point that what we had the availability to file a counteraffidavit on was the payments. And perhaps my client, if he had any information, he has missed the boat on filing any of that information about payments he did make. But what was in that affidavit that was calculated from that principle that was applied as other payments, there was nothing there that he could have known to file an affidavit on. Those other amounts are simply not calculable without understanding them. I do invite the Court to examine that paperwork in the record. It is thousands of lines long with small letter codes identifying hundreds of small-dollar amounts that have to be added up to reach these numbers. Dispensing with that to the argument on Bermudez, we acknowledge that we are stuck with the statement 2.3.2.2 in the record. It is transcripted, whatever the exact section is. The exact section 2322 in the record does reference 232, which was the proper section. That's really all I have to say on the issue. But I am aware that this Court can only review the nature and extent of the arguments that are present in the record. Our position on the issue that Mr. Arger identifies, that we come in more than 30 days after the sale, I do appreciate how he's argued this, but the sale had not yet been confirmed at that point. So this issue was still within the jurisdiction of the trial court. And for my final statement, we do believe that City Mortgage v. Bermudez is distinguishable. The defendants in that case do not initially attach the documents submitted in a motion to set aside the sale. Then the defendants do receive leave to submit those documents. Then they submit the documents without certifying they're true and correct copies. Mr. Arger states that the witness can't come in and just authenticate these documents. But actually, Bermudez cites to Kimball v. Earl M. Jorgensen Company in paragraph 68 that says the witness could authenticate the documents. The danger identified is a conclusory nature of what a complete application would be and the failure of the foreclosure defendant to identify the actual documents sent. We're away from that danger. We identified the exact documents sent and when they were sent and produced them. Thank you. Further distinguishable from Bermudez, this court does have the advantage of the record on appeal inclusive of the oral arguments made during Bermudez, or excuse me, made during the motion for confirmation of sale, which is unlike Bermudez and can review those records. I'm happy to take any questions on that final issue in my minute. All right. I'd like to thank the court for the time and have a meeting with you today. Thank you, Mr. Arger. Thank you both for your argument today. I'm going to take this matter under advisory of the defense of the witness. Now we'll take a short recess.